GARRETT et al. v. MALLARD.

(Circuit Court of Appeals, Fourth Circuit. November 16, 1916.)

No. 1459.

1. COURTS ⬅➡323—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

The federal court may take jurisdiction of a suit on the ground of diversity of citizenship, where it was alleged, notwithstanding plaintiff had removed from Virginia, the state of defendant's residence, only a short time before beginning suit, where he testified that he intended to become a citizen of Maryland, the state to which he removed; his citizenship being a question of intention.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 885, 886; Dec. Dig. ⬅➡323.]

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes .

2. COURTS ⬤═328(10)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTRO-VERSY.

Where plaintiff in good faith believed he was entitled to recover from defendants a sum greater than $3,000, the federal courts have jurisdiction of his suit, notwithstanding plaintiff recovered a less sum or nothing at all.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. ⬤═328(10).]

3. TRADE-MARKS AND TRADE-NAMES ⬤═98 — CONTRACTS — AGREEMENTS — BREACH.

Plaintiff and the individual defendant, who was president of the corporate defendant, entered into an agreement for the formation of a corporation to manufacture soft drinks. Plaintiff agreed to assign his formula to the corporation to be organized, in consideration of one-fifth of the stock to be issued and employment for at least 3 months, the employment then to be terminable by either party upon 30 days' notice. The agreement also provided an arrangement whereby plaintiff might maintain his proportionate share in the stock of the corporation to be formed, in case additional stock was issued. While a charter was obtained, no new corporation was organized, and the corporate defendant began the manufacture of the drink under plaintiff's formula. Some months after the agreement plaintiff was discharged without the notice provided, whereupon he sued to enjoin further use of the formula and name of the new drink and for an accounting. Defendants contended that their expenditures had added to the salable value of the formula and trade-name, but it did not appear whether the expenditures were made after plaintiff's connection with the business was severed. *Held*, that plaintiff was entitled to have the formula and trade-name sold, and to recover one-fifth of the proceeds, less the amount of expenses incurred by defendants in excess of profits, which expenses added salable value to the formula and trade-name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬤═98.]

4. TRADE-MARKS AND TRADE-NAMES ⬤═98—CONTRACTS—BREACH—RIGHT OF ACTION.

In such case, the expenditures by defendants not having been made pursuant to the contract, plaintiff is not personally liable therefor.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬤═98.]

5. TRADE-MARKS AND TRADE-NAMES ⬤═93(1)—CONTRACTS—BREACH—BURDEN OF PROOF.

In such case, defendants have the burden of showing that their expenditures enhanced the value of the formula and trade-name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 104½; Dec. Dig. ⬤═93(1).]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit by Logan L. Mallard against Paul Garrett and another. From a decree for complainant, defendants appeal. Affirmed.

Walter H. Taylor, of Norfolk, Va. (Loyall, Taylor & White, of Norfolk, Va., on the brief), for appellants.

S. M. Brandt, of Norfolk, Va., for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSE, District Judge. In this opinion the parties will be described as they were below, viz. the appellee as the plaintiff, the appellants as the defendants.

The individual defendant is the president and largest stockholder of the corporation. They had been wine makers. They, wanted to take up the manufacture of soft drinks. The plaintiff knew how to compound them. On the 1st of October, 1914, negotiations between him and the defendant Garrett resulted in a written contract. It provided for the formation of a corporation with a maximum capital of $25,000, of which $10,000 was to be at once issued. The plaintiff was to assign his formula to the new corporation, and receive therefor $2,000 in stock and $500 in cash. Garrett was to furnish $7,900 as required for the needs of the company and to receive stock therefor. The remaining $100 of the first issue was to be given to the treasurer of the corporate defendant for services rendered or to be rendered by him. Garrett was to be president and plaintiff vice president of the company. The latter was to receive a salary of $150 a month, beginning October 1, 1914. His employment was to last at least 3 months, and to be thereafter terminable by either party upon 30 days' notice. If within 5 years more stock was issued, Garrett was to lend the plaintiff the money necessary to take up one-fifth of it. On January 8, 1915, in pursuance of this agreement, a charter was obtained for "Garrett's Corporation," but no organization thereunder was ever effected.

Early in February, 1915, the parties, or more strictly speaking the corporate defendant, began to manufacture, under plaintiff's formula, a drink to which they gave the name of "Satanet." On May 15, 1915, defendants peremptorily discharged the plaintiff without giving him the notice provided for in the contract. They went on with the manufacture, advertising, and sale of "Satanet." On July 21, 1915, plaintiff brought this suit. He asked for an injunction against the further use of the formula, and the name "Satanet," and for an accounting for profits already earned. The court below found that no profits had been made, and decreed that the formula and trade-name "Satanet" should be sold, and one-fifth of the net proceeds paid to the plaintiff and four-fifths to Garrett.

[1] It is here urged that the federal court was without jurisdiction, because neither diverse citizenship nor a sufficient amount in controversy was made to appear. Both were properly alleged. The plaintiff swore that some time before the bringing of the suit he had become a citizen of Maryland. Whether he had or had not depended upon the intention with which he had removed from Norfolk to Baltimore. The court below heard his testimony and was obviously satisfied with it.

[2] The record sufficiently shows that the plaintiff, in good faith, believed he was entitled to recover from the defendants money and property rights worth far more than $3,000. Under such circumstances, on the question of jurisdiction it matters not that the plaintiff may actually recover less than $3,000, or nothing at all.

[3-5] Upon the merits, defendants say that the decree below is

inequitable, because it does not charge the plaintiff with any part of the sum by which the expenditures of the defendants for making, advertising, and selling "Satanet" exceeded the receipts from its sales. Defendants' bookkeeper testified that between October 1, 1914, and December 1, 1915, defendants had expended for such purposes the sum of $81,062.03. They received from sales $37,752.86, and when he testified there was on hand in merchandise and accounts receivable $25,969.85. According to these figures the net loss was upwards of $17,000, and that, too, upon the assumption that all the uncollected accounts will be collected.

It appears, however, that the defendants did not organize the corporation for which the contract provided. The plaintiff was not consulted as to what disbursements should be made. A large, and probably the larger, part of the expenditures was made after defendants had severed all connections with the plaintiff, and not a little apparently even after the bringing of this suit. Such sums having not been paid out in accordance with the plaintiff's contract, he cannot be held personally liable for them, or for any part of them.

Nevertheless, defendants were free to prove, if the fact were so, that the money they had paid out had added some definite figure to the salable value of the formula and the trade-name. If they had done so, they would be entitled out of the proceeds of the sale to receive such amount, not exceeding, of course, the sum they are now out of pocket. The burden of making such showing rested upon them. They have not sustained it, or even attempted so to do, very probably because under the circumstances it is impossible to obtain clear and convincing evidence on such a question. If so, they must bear the loss which has come to them in consequence of their having ignored plaintiff's rights.

The case is a peculiar one. It seems to us that the decree below is right, and it is therefore affirmed.